Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@attorneysforconsumers.com
abacon@attorneysforconsumers.com
Attorneys for Plaintiff
***Additional Counsel on Signature Page***

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW TYE, HARRY SCHMOLL,  MICHAEL WILCOX, CRAIG LAMSTER and TANYA THOMPSON MULLINS, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., and WAL-MART STORES EAST, L.P.<br><br>                    Defendants. | 8:15-cv-1615 (DOC-JCG)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## <u>INTRODUCTION</u>

1.      This is a proposed class action, brought on behalf of all those who purchased Walmart's store-brand **"Great Value Pork & Beans in Tomato**

**Sauce,"** in a Walmart store located in the United States, between October 7, 2009 and the present ("the Nationwide Class").

2.     This action is also brought on behalf of five proposed sub-classes, the California Sub-Class, the New Jersey Sub-Class, the Pennsylvania Sub-Class, the New York Sub-Class and the Illinois Sub-Class (collectively "the State Sub-Classes"), composed of all those who purchased the Product at a Walmart store located in California, New Jersey, Pennsylvania, New York and Illinois, respectively, between October 7, 2009 and the present.

3.     **"Great Value Pork & Beans in Tomato Sauce"** ("the Product") is a Walmart store -brand food product which is distributed by Defendants and is sold exclusively by Defendants at Walmart stores, including Walmart stores located in every state in the United States.

4.     Despite the inclusion of the words **"Pork & Beans"** in the name of the Product itself, and despite the fact that the **"INGREDIENTS"** section on the label on each and every container of the product lists **"Pork"** as an ingredient of the product, rigorous scientific testing has revealed that the Product actually contains no pork whatsoever.

5.     Thus, each and every can of the Product bears a uniformly-worded label which makes the same false, affirmative statements of fact regarding whether pork is included in the Product.

6.      Upon information and belief,  Defendants have been fully aware that
the Product actually contains no pork since its inception.

7.      This complaint seeks injunctive, declaratory and monetary relief for
Plaintiffs, the proposed Nationwide Class, and the proposed State Sub-Classes, as
outlined in greater detail herein.

## JURISDICTION AND VENUE

8.      There is federal subject matter jurisdiction over this matter under the
Class Action Fairness Act in that it is a proposed class action, there are more than
100 members of the Nationwide Class and each State Sub-Class, at least some
class members and some defendants are citizens of different states, and the
amount in controversy is more than $5 million.

## THE PARTIES

9.      Plaintiff Matthew Tye resides in Brea, California.

10.      Like all members of the proposed class, Plaintiff Tye purchased the
Product in a Walmart store located in the United States between October 7, 2009
and the present. Like all members of the proposed California Sub-class, Plaintiff
Tye purchased the Product at a Walmart store located in California between
October 7, 2009 and the present.

11.     Specifically, Plaintiff Tye purchased the Product at Walmart Store #5641 located in La Habra, California, on various dates between October 7, 2009 and the present, including on October 2, 2015, when Plaintiff Tye purchased a can of the Product at this location. See Attachment A, Receipt dated October 2, 2015.

12.     Plaintiff Schmoll resides in Cherry Hill, New Jersey.

13.     Like all members of the proposed class, Plaintiff Schmoll purchased the Product in a Walmart store located in the United States between October 7, 2009 and the present. Like all members of the proposed New Jersey sub-class, Plaintiff purchased the Product at a Walmart store located in New Jersey between October 7, 2009 and the present.

14.     Specifically, Plaintiff Schmoll purchased the Product at Walmart Store #5340 located in Cherry Hill, New Jersey, on various dates between October 7, 2009 and the present, including on August 30, 2015, when Plaintiff Schmoll purchased three cans of the product at this location. See Attachment B, Receipt dated August 30, 2015.

15.     Plaintiff Michael Wilcox resides in Philadelphia, Pennsylvania.

16.     Like all members of the proposed class, Plaintiff Wilcox purchased the Product in a Walmart store located in the United States between October 7, 2009 and the present. Like all members of the proposed Pennsylvania Sub-class,

Plaintiff Wilcox purchased the Product at a Walmart store located in Pennsylvania between October 7, 2009 and the present.

17.     Specifically, Plaintiff Wilcox purchased the Product at Walmart Store #2141 located in Philadelphia, Pennsylvania, on various dates between October 7, 2009 and the present, including on October 6, 2015, when Plaintiff Wilcox purchased a can of the Product at this location. See Attachment C, Receipt dated October 6, 2015.

18.     Plaintiff Craig Lamster resides in New York City, New York.

19.     Like all members of the proposed class, Plaintiff Lamster purchased the Product in a Walmart store located in the United States between October 7, 2009 and the present. Like all members of the proposed New York Sub-Class, Plaintiff Lamster purchased the Product at a Walmart store located in New York between October 7, 2009 and the present.

20.     Specifically, Plaintiff Lamster purchased three cans of the Product on October 10, 2015 at Walmart Store # 2905, located in Suffern, New York. See Attachment D, Receipt dated October 10, 2015.

21.     Plaintiff Tanya Thompson Mullins resides in Schaumburg, Illinois.

22.     Like all members of the proposed class, Plaintiff Mullins purchased the Product in a Walmart store located in the United States between October 7, 2009 and the present. Like all members of the proposed Illinois Sub-Class,

Plaintiff Mullins purchased the Product at a Walmart store located in Illinois between October 7, 2009 and the present.

23.     Plaintiff Mullins typically purchased at least four cans of the Product per month at the Walmart Store located at 801 Meacham Road, Elk Grove Village, Illinois, with her most recent such purchase occurring in September of 2015.

24.     Defendant Wal-Mart Stores, Inc. is a corporation which is headquartered at 702 SW 8th Street, Bentonville, Arkansas 72716. The uniformly-worded label on the product admits, <u>inter</u> <u>alia</u>, that the product was **"DISTRIBUTED BY: Wal-Mart Stores, Inc."** Upon information and belief, Defendant Wal-Mart Stores, Inc. is the owner and operator of various Walmart stores throughout the United States, including California.

25.     Defendant Wal-Mart Stores East, L.P. maintains its principal offices at 702 SW 8th Street, Bentonville, Arkansas 72716. Wal-Mart Stores East, L.P. purports to own and operate all Walmart stores in various states, including New Jersey and Pennsylvania.

26.     Together, Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, L.P. (collectively "Walmart") jointly distributed, advertised, labeled, sold and/or manufactured the product in, <u>inter</u> <u>alia</u>, California, New Jersey, Pennsylvania, New York and Illinois, with each defendant jointly determining

that each such container of the product would bear the name **"Great Value Pork & Beans in Tomato Sauce"** and would list **"PORK"** under the portion of the product label marked **"INGREDIENTS."**

## CLASS ACTION ALLEGATIONS

27.     Plaintiffs bring this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a Nationwide Class defined as:

**All persons who, between October 7, 2009 and the present, purchased one or more containers of "Great Value Pork & Beans in Tomato Sauce" at a Walmart store located in the United States.**

28.     Plaintiff Tye also brings this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a California Sub-Class defined as:

**All persons who, between October 7, 2009 and the present, purchased one or more containers of "Great Value Pork & Beans in Tomato Sauce" at a Walmart store located in California.**

29.     Plaintiff Schmoll also brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a New Jersey Sub-Class defined as:

**All persons who, between October 7, 2009 and the present, purchased one or more containers of "Great Value Pork & Beans in Tomato Sauce" at a Walmart store located in New Jersey.**

30.     Plaintiff Wilcox also brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a Pennsylvania Sub-Class defined as:

**All persons who, between October 7, 2009 and the present, purchased one or more containers of "Great Value Pork & Beans in Tomato Sauce" at a Walmart store located in Pennsylvania.**

31.     Plaintiff Lamster also brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a New York Sub-Class defined as:

**All persons who, between October 7, 2009 and the present, purchased one or more containers of "Great Value Pork & Beans in Tomato Sauce" at a Walmart store located in New York.**

32.     Plaintiff Mullins also brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of an Illinois Sub-Class defined as:

**All persons who, between October 7, 2009 and the present, purchased one or more containers of "Great Value Pork & Beans in Tomato Sauce" at a Walmart store located in Illinois.**

33.     The members of the class and sub-classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

34.     Upon information and belief, the proposed Nationwide Class is composed of over 100,000 persons and each proposed State Sub-Class is composed of at least 5,000 persons.

35.     No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendants.

36.     Rather, all claims in this matter arise from the identical, false, written affirmative  statements on the Product label as outlined in detail herein.

37.     There are common questions of law and fact affecting the rights of all Nationwide Class members, including, <u>inter</u> <u>alia</u>, the following:

**a. Whether there is pork in the Product;**

**b. Whether Defendants' act in naming the Product "Great Value Pork & Beans in Tomato Sauce" was a false, affirmative statement of fact;**

**c. Whether Defendants' act in placing a uniform written statement on the label of the Product, listing "PORK" under the word "INGREDIENTS" was a false, affirmative statement of fact;**

**d. Whether each Defendant was aware that the Product contained no pork whatsoever; and**

**e. The date each Defendant became aware that the Product contained no pork whatsoever.**

38.     In addition, there are common questions of law and fact affecting the rights of all California Sub-Class members, including, <u>inter</u> <u>alia</u>, the following:

**a. Whether Defendants' actions, as outlined herein, violated the California Business & Professions Code § 17200 <u>et</u> <u>seq.</u>;**

**b. Whether Defendants' actions, as outlined herein, violated the California Business & Professions Code § 17500 <u>et</u> <u>seq.</u>;**

    **c.** **Whether Defendants' action in placing the word "PORK" under the word "INGREDIENTS" on the Product label constituted an express warranty under California law; and**

    **d.** **Whether, by the facts alleged herein, Defendants have breached an express warranty under California common law.**

39.    In addition, there are common questions of law and fact affecting the rights of all New Jersey Sub-Class members, including, <u>inter alia</u>, the following:

    **a.** **Whether Defendants' action, in naming the Product "Great Value Pork & Beans in Tomato Sauce," was a misleading sales practice in the sale of goods in violation of <u>N.J.S.A</u>. 56:8-2 of the New Jersey Consumer Fraud Act;**

    **b.** **Whether Defendants' action, in placing a uniform written statement listing "PORK" under the word "INGREDIENTS" on the Product label, was a false, affirmative statement of fact in the sale of goods in violation of <u>N.J.S.A</u>. 56:8-2 of the New Jersey Consumer Fraud Act;**

    **c.** **Whether Defendants' action in placing the word "PORK" under the word "INGREDIENTS" on the Product label constituted an express warranty under New Jersey law;**

    **d.** **Whether, by the facts alleged herein, Defendants have breached an express warranty under New Jersey law;**

    **e.** **Whether the Product label was a consumer notice or warranty within the meaning of the New Jersey Truth in Consumer Contract, Warranty and Notice Act;**

**f. Whether Defendants' actions, as described herein, violated the New Jersey Truth in Consumer Contract, Warranty and Notice Act;**

**g. Whether an implied contract relating to the sale of the Product existed under New Jersey common law between Defendants and each member of the New Jersey Sub-Class; and**

**h. Whether, by placing false statements of fact on the Product label, as described herein, Defendants breached the implied duty of good faith and fair dealing which was part of the implied contract of sale between Defendants and each member of the New Jersey Sub-Class.**

40.    In addition, there are common questions of law and fact affecting the rights of all Pennsylvania Sub-Class members, including, <u>inter alia</u>, the following:

**a. Whether Defendants' action, in naming the Product "Great Value Pork & Beans in Tomato Sauce," was "deceptive conduct which creates a likelihood of confusion or misunderstanding" within the meaning of the Pennsylvania Uniform Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4)(xxi);**

**b. Whether Defendants' action, in placing a uniform written statement listing "PORK" under the word "INGREDIENTS" on the Product label, was  "deceptive conduct which creates a likelihood of confusion or misunderstanding" within the meaning of  the Pennsylvania Uniform Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4)(xxi);**

**c. Whether Defendants' action in placing the word "PORK" under the word "INGREDIENTS" on the Product label constituted an express or implied warranty under Pennsylvania law;**

**d. Whether, by the facts alleged herein, Defendants have breached an express or implied warranty under Pennsylvania law;**

**e. Whether an implied contract relating to the sale of the Product existed under Pennsylvania common law between Defendants and each member of the Pennsylvania Sub-Class; and**

**f. Whether, by placing false statements of fact on the Product label, as described herein, Defendants breached the implied duty of good faith and fair dealing which was part of the implied contract of sale between Defendants and each member of the Pennsylvania Sub-Class.**

41.    In addition, there are common questions of law and fact affecting the rights of all New York Sub-Class members, including, <u>inter alia</u>, the following:

**a. Whether Defendants' action, in naming the Product "Great Value Pork & Beans in Tomato Sauce," was in a misleading, inaccurate, and deceptive manner in violation of the New York General Business Law § 349;**

**b. Whether Defendants' action, in placing a uniform written statement listing "PORK" under the word "INGREDIENTS" on the Product label was in a misleading, inaccurate, and deceptive manner in violation of the New York General Business Law § 350;**

**c. Whether Defendants' action in placing the word "PORK" under the word "INGREDIENTS" on the Product label constituted an express warranty under New York law; and**

**d. Whether, by the facts alleged herein, Defendants have breached an express warranty under New York law.**

42.    In addition, there are common questions of law and fact affecting the rights of all Illinois Sub-Class members, including, <u>inter</u> <u>alia</u>, the following:

**a.  Whether Defendants' actions, as outlined herein, violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, <u>et seq</u>.;**

**b.  Whether, by the facts alleged herein, Defendants have breached an express or implied warranty under Illinois common law;**

**c.  Whether an implied contract for the purchase of goods existed between Defendants and each member of the Illinois Sub-Class under Illinois common law; and**

**d.  Whether Defendants' actions, as outlined herein, breached that implied contract and/or the implied covenant of good faith and fair dealing that was part of each such contract under Illinois common law.**

43.    Plaintiffs are each members of the Nationwide Class and respective State Sub-Class they seek to represent.

44.    The claims of Plaintiffs are not only typical of all Nationwide Class and State Sub-Class members, they are identical.

45.    All claims of Plaintiffs and the Nationwide Class and State Sub-Classes arise from the identical false, written statement of affirmative fact on the Product label as described herein.

46.    All claims of Plaintiffs and the Nationwide Class and State Sub-Classes are based on the same legal theories.

47.    Plaintiffs have no interest antagonistic to, or in conflict with, the Nationwide Class and State Sub-Classes.

48.    Plaintiffs will thoroughly and adequately protect the interests of the Nationwide Class and State Sub-Classes, having retained qualified and competent legal counsel to represent themselves and the Nationwide Class and State Sub-Classes.

49.    Defendants have acted and refused to act on grounds generally applicable to the Nationwide Class and State Sub-Classes, thereby making appropriate injunctive and declaratory relief for the class as a whole.

50.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

51.    A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member were less than $2 per container of the Product purchased and, as such, individual actions are not economically feasible.

52.     Common questions will predominate, and there will be no unusual manageability issues.

## FACTUAL ALLEGATIONS

53.     Defendants are in the business of distributing, marketing, selling, and/or manufacturing inter alia, **"Great Value Pork & Beans in Tomato Sauce."**

54.     **"Great Value Pork & Beans in Tomato Sauce"** is an exclusive Walmart "store brand" food product, sold at Walmart stores throughout the United States, including 200 Walmart stores in California, 60 Walmart stores in New Jersey, 136 Walmart stores in Pennsylvania, 84 Walmart stores in New York, and 156 Walmart stores in Illinois.

////

////

////

////

///

55.    Since the initial offering of the Product, each and every label on this Product has borne a uniformly-worded label which identifies the name of the Product in large letters as **"Great Value Pork & Beans in Tomato Sauce,"** as depicted in Figure 1, below.

### Figure 1



////

////

////

56.    Since the initial offering of the Product, each and every label on this Product has borne a uniformly-worded label which includes, <u>inter alia</u>, the word **"PORK"** under the word **"INGREDIENTS,"** as depicted in Figure 2, below.

<u>**Figure 2**</u>



57.    In actuality, rigorous scientific testing, including microscopic and chemical analysis, has revealed that the Product contains no pork whatsoever.

58.    The testing upon which Plaintiffs rely was conducted in accordance with FDA Protocols and the Official Methods of the Association of Official Analytical Chemists International (AOAC), including the 12-sample method set forth in 21 C.F.R. § 101.9(g)(2). Plaintiffs do not believe that such testing was necessary or required in this case, but they have nevertheless complied with these protocols out of an abundance of caution.

59.     Defendants, as distributors, developers, exclusive sellers and/or manufacturers of **"Great Value Pork & Beans in Tomato Sauce,"** have been aware since the Product's inception that the Product contains no pork whatsoever.

60.     It is equally clear that Defendants have been fully aware for some time that in order to label a product as "Pork & Beans," the product must contain at least some pork. See U.S. Food and Drug Administration CPG Sec. 567.200, entitled **"Pork and Beans and Similar Bean Products,"** which makes clear that the product must be made **"with pork."**

61.     Indeed, over fifteen years ago, the United States Department of Agriculture promulgated a written **"Commercial Item Description"** which specifies that any product described as **"'Pork and Beans in Tomato Sauce' … shall contain a minimum of 12 percent ham, bacon or pork based on the weight of the smoked or fresh meat at the time of formulation."**

62.     Despite this, Defendants opted to name the Product **"Great Value Pork & Beans in Tomato Sauce,"** knowing that it contains no pork whatsoever.

63.     Defendants also chose to list the word **"PORK"** on the Product label, under the word **"INGREDIENTS,"** knowing that the Product actually contained no pork whatsoever.

64.     Despite all of the foregoing, Defendants continue to sell the Product, with the same written, false, uniformly-worded statements on the Product label outlined herein, in Walmart stores throughout the United States, including California, New Jersey, Pennsylvania, New York and Illinois.

## COUNT I

### BREACH OF WARRANTY

### On Behalf of the Nationwide Class

65.     Defendants sold the Product in their regular course of business.

66.      Plaintiffs and the members of the Nationwide Class purchased the Product.

67.     The written, uniformly-worded label on the Product (as depicted herein) constituted an express warranty provided to all purchasers of the Product under the law of each state in the United States in which the Product was sold.

68.     Defendants' written affirmations of fact, promises, and/or descriptions on the Product label were part of that express warranty under the laws of each state in the United States in which the Product was sold.

69.     By the acts alleged herein, Defendants breached that warranty because the Product cannot and does not conform to the properties Defendants represented on the label.

70.     The false information provided on the label was undiscoverable to Plaintiffs and the members of the Nationwide Class at the time of purchase of the Product.

71.     All conditions precedent to seeking liability under this claim for breach of warranty have been performed by or on behalf of Plaintiffs and the members of the Nationwide Class in terms of paying for the goods at issue.

72.     Defendants had actual and/or constructive notice of the false labeling information and to date have taken no action to remedy their breaches of warranty.

73.     Defendants were on notice of their breaches of warranty and have refused to remedy such breaches.

74.     By placing the Product into the stream of commerce, by operation of law in each state in the United States, Defendants also impliedly warranted to Plaintiffs and the members of the Nationwide Class that the Product was accurately labeled in conformance with the law.

75.     Defendants' breaches of warranty have caused Plaintiffs and the members of the Nationwide Class to suffer injuries by paying for falsely labeled products. As a direct and proximate result of Defendants' breaches of warranty, Plaintiffs and the members of the Nationwide Class have suffered damages and

continue to suffer damages, including economic damages in terms of the

difference between the value of the Product as promised and the value of the

Product as delivered.

76.    As a result of the breach of these warranties, Plaintiffs and the

members of the Nationwide Class are entitled to legal and equitable relief

including damages, costs, attorneys' fees, rescission, and/or other relief as

deemed appropriate, for an amount to compensate them for not receiving the

benefit of their bargain.

## COUNT II

### UNJUST ENRICHMENT

### On Behalf of the Nationwide Class

77.    Plaintiffs incorporate all preceding paragraphs of this complaint as if

set forth fully herein.

78.    Plaintiffs and the members of the Nationwide Class have conferred

substantial benefits on Defendants by purchasing the Product, and Defendants

have knowingly and willingly accepted and enjoyed these benefits.

79.    Defendants either knew or should have known that the payments

rendered by Plaintiffs and the members of the Nationwide Class were given and

received with the expectation that the Product would be as represented and warranted.

80.   Under the common law of unjust enrichment in every state in the United States where the Product was sold, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances and such retention constitutes unjust enrichment.

81.   Under the law of every state in the United States where the Product was sold, both law and equity demand disgorgement of Defendants' ill-gotten gains.

82.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the members of the Nationwide Class are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

## COUNT III

**CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.**
**Unlawful Business Acts and Practices**

### On Behalf of the California Sub-Class Only

83.   Plaintiff Tye incorporates all preceding paragraphs of this complaint as if set forth fully herein.

84.     Defendants' conduct as set forth herein constitutes unlawful business acts and practices within the meaning of the California Business & Professions Code §17200, et seq.

85.     Defendants sold the Product in California during the relevant class period applicable to Plaintiff Tye and the members of the California Sub-Class.

86.     Defendants are each a "person" within the meaning of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code section 109875, et seq. (the "Sherman Law").

87.     Defendants' business practices, as described herein, are unlawful under section 17200, et seq. by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

88.     Defendants' business practices are unlawful under section 17200, et seq. by virtue of Defendants' violations of section 17500, et seq., which forbids untrue and misleading advertising.

89.     Defendants' business practices are unlawful under section 17200 et seq. by virtue of Defendants' violations of the Consumers Legal Remedies Act, California Civil Code section 1750, et seq.

90.     Defendants sold Plaintiff Tye and the members of the California Sub-Class the Product, which was not capable of being sold or held legally in California, and which was legally worthless or worth less than advertised, and Plaintiff Tye and the members of the California Sub-Class paid a premium price for the Product.

91.     As a result of Defendants' illegal business practices, Plaintiff Tye and the members of the California Sub-Class, pursuant to California Business and Professions Code section 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff Tye and members of the California Sub-Class any money paid for the Product.

92.     Defendants' unlawful business acts present a threat and a reasonable continued likelihood of injury to Plaintiff Tye and members of the California Sub-Class.

93.     As a result of Defendants' conduct, Plaintiff Tye and members of the California Sub-Class, pursuant to California Business and Professions Code section 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to

disgorge Defendants' ill-gotten gains and restore to Plaintiff Tye and members of the California Sub-Class any monies paid for the Product.

## COUNT IV

### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq. Unfair Business Acts and Practices

### On Behalf of the California Sub-Class Only

94.     Plaintiff Tye incorporates all preceding paragraphs of this complaint as if set forth fully herein.

95.     Defendants' conduct as set forth herein constitutes unfair business acts and practices within the meaning of the California Business and Professions Code § 17200, et seq.

96.     Defendants sold the Product in California during the relevant class period applicable to Plaintiff Tye and the members of the California Sub-Class.

97.     Plaintiff Tye and the members of the California Sub-Class suffered a substantial injury by virtue of buying the Product which they would not have suffered absent Defendants' illegal conduct.

98.     Defendants' deceptive marketing, advertising, packaging and labeling of the Product

and their sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

99.    Defendants sold the product to Plaintiff Tye and the California Sub-Class, which was not capable of being legally sold in California and which was legally worthless.

100.    Plaintiff and the members of the California Sub-Class had no way of reasonably knowing that the Product was misbranded and was not properly marketed, advertised, packaged and labeled, and thus they could not have reasonably avoided the injury each of them suffered.

101.    The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendants' conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff Tye and the California Sub-Class.

102.    Pursuant to Business and Professions Code § 17203, and as a result of Defendants' conduct, Plaintiff Tye and the California Sub-Class are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and

restore any money paid by Plaintiff Tye and the members of California Sub-Class to purchase the Product from Defendants in California.

## COUNT V

**CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.**
**Fraudulent Business Acts and Practices**

### On Behalf of the California Sub-Class Only

103.    Plaintiff Tye incorporates all preceding paragraphs of this complaint as if set forth fully herein.

104.    Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code section 17200, et seq.

105.    Defendants' conduct in mislabeling and misbranding its food products originated from and was approved at Defendants' headquarters.

106.    Defendants sold the Product in California during the relevant class period.

107.    Defendants' misleading marketing, advertising, packaging, and labeling of the Product and their misrepresentations that the Product was salable, capable of legal possession and not misbranded were likely to deceive reasonable consumers and, in fact, Plaintiff Tye and the members of the California Sub-

Class were deceived.  By the acts set forth herein, Defendants have engaged in fraudulent business acts and practices.

108.    Defendants' fraud and deception caused Plaintiff Tye and members of the California Sub-Class to purchase the Product from Defendants which they would have not otherwise purchased had they known the true nature of the Product.

109.    Defendants sold Plaintiff Tye and members of the California Sub-Class the Product, which was not capable of being sold or held legally and which was legally worthless.  Plaintiff Tye and members of the California Sub-Class paid a premium price for the Product.

110.    As a result of Defendants' conduct as set forth herein, Plaintiff Tye and members of the California Sub-Class, pursuant to California Business and Professions Code section 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for the Product by Plaintiff Tye and members of the California Sub-Class.

# <u>COUNT VI</u>

**CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500 et seq.
Misleading and Deceptive Advertising**

## <u>On Behalf of the California Sub-Class Only</u>

111.    Plaintiff Tye incorporates all preceding paragraphs of this complaint as if set forth fully herein.

112.    Plaintiff Tye asserts this cause of action for violations of California Business and Professions Code § 17500, <u>et</u> <u>seq</u>. for misleading and deceptive advertising against Defendants on behalf of the California Sub-Class.

113.    Defendants sold the Product to Plaintiff Tye and the members of the California Sub-Class in California.

114.    Defendants sold the Product to Plaintiff Tye and the California Sub-Class, which was not capable of being legally sold in California and which was legally worthless.

115.    By the acts alleged herein, Defendants engaged in a scheme of offering the Product for sale in California to Plaintiff Tye and the members of the California Sub-Class by way of, <u>inter</u> <u>alia</u>, product packaging and labeling.

116.    These materials misrepresented and/or omitted the true contents and nature of Defendants' Product, as outlined in greater detail previously.

117.    Defendants' labels for the Product were used within California and come within the definition of advertising as contained in California Business and Professions Code § 17500, et seq. in that such Product packaging and labeling were intended as inducements to purchase the Product and are statements disseminated by Defendants to Plaintiff Tye and the California Sub-Class that were intended to reach members of the California Sub-Class.

118.    Defendants knew, or in the exercise of reasonable care, should have known, that these statements were misleading and deceptive as set forth herein.

119.    In furtherance of their plan and scheme, Defendants prepared and distributed within California via product packaging and labeling, statements that misleadingly and deceptively represented the composition and the nature of the Product.

120.    Plaintiff Tye and the members of the California Sub-Class necessarily and reasonably relied on Defendants' labels, and were the intended targets of such representations.

121.    Indeed, as the misrepresentations at issue were contained on the label of the Product itself, the Court may presume that the members of the California Sub-Class relied upon this false statement.

122.    Defendants' conduct in disseminating misleading and deceptive statements in California to Plaintiff Tye and the members of the California Sub-Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of the Product in violation of the "misleading prong" of California Business and Professions Code § 17500, et seq.

123.    As a result of Defendants' violation of the "misleading prong" of California Business and Professions Code § 17500, et seq., Defendants have been unjustly enriched at the expense of Plaintiff Tye and the members of the California Sub-Class.

124.    Misbranded products cannot be legally sold or held in California and are legally worthless.

125.    Pursuant to California Business and Professions Code § 17535, Plaintiff Tye and the members of the California Sub-Class are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Product in California.

# COUNT VII

## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500 et seq.
## Untrue Advertising

### On Behalf of the California Sub-Class Only

126.    Plaintiff Tye incorporates all preceding paragraphs of this complaint as if set forth fully herein.

127.    Plaintiff Tye asserts this cause of action against Defendants on behalf of the California Sub-Class for violations of California Business and Professions Code § 17500, et seq., regarding untrue advertising.

128.    Defendants engaged in a scheme of offering the Product for sale to Plaintiff Tye and the members of the California Sub-Class in California by way of product packaging and labeling, as outlined herein.

129.    These materials misrepresented and/or omitted the true contents and nature of the Product.

130.    With regard to sales of the Product in California during the class period relevant to the California Sub-Class, Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in California Business and Professions Code § 17500, et seq. in that the Product's packaging and labeling were intended as inducements to

purchase the Product, and are statements disseminated by Defendant to Plaintiff Tye and the California Sub-Class.

131.    Defendants knew, or in the exercise of reasonable care, should have known that these statements were untrue.

132.    In furtherance of their plan and scheme, Defendants prepared and distributed in California via the Product's packaging and labeling, statements that falsely advertise the composition of the Product, as outlined in greater detail previously, and which falsely misrepresented the nature of the Product.

133.    Plaintiff Tye and the members of the California Sub-Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

134.    Indeed, it is impossible to envision a scenario in which someone who desired to purchase pork and beans would not look at the label of the product, which identified the name of the product as **"Pork & Beans."**

135.    Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiff Tye and members of the California Sub-Class by obfuscating the true contents, nature and quality of the Product in violation of the "untrue prong" of California Business and Professions Code § 17500.

136.  As a result of Defendants violations of the "untrue prong" of California Business and Professions Code § 17500, et seq., Defendants have been unjustly enriched at the expense of Plaintiff and the members of the California Sub-Class.

137.  Pursuant to California Business and Professions Code § 17535, Plaintiff Tye and the members of the California Sub-Class are entitled to an order enjoining such further conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for the Product in California by Plaintiff Tye and the members of the California Sub-Class.

## COUNT VIII

**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, Cal. Civ. Code § 1750, et seq.**

### On Behalf of the California Sub-Class Only

138.  Plaintiff Tye incorporates all preceding paragraphs of this complaint as if set forth fully herein.

139.  This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, et seq. (the "CCLRA") because the actions of Defendants, and their conduct described herein, constitute

transactions that have resulted in the sale or lease of goods or services to consumers in California.

140.   Plaintiff Tye and each member of the California Subclass, are consumers as defined by California Civil Code § 1761(d).

141.   Defendants intended to sell the Product to, inter alia, Plaintiff Tye and the members of the California Sub-Class.

142.   The Product is goods within the meaning of Civil Code § 1761(a).

143.   Defendants violated the CCLRA in at least the following respects:

    **a.  in violation of § 1770(a)(5), in that these Defendants represented that the Product had characteristics, ingredients, and benefits (i.e. that it contained pork) which the Product did not actually possess;**

    **b.  in violation of § 1770(a)(7), in that these Defendants represented that the Products was of a particular standard, quality, or grade (i.e. that it was "Pork and Beans" and that it contained pork), when the Product was actually only beans and tomato sauce;**

    **c.  in violation of § 1770(a)(9), in that these Defendants have advertised the Product on its label as being "Pork and Beans," with intent not to sell the Product as advertised, because the Product was actually only beans and tomato sauce; and**

**d.  in violation of § 1770(a)(16), in that these Defendants represented that the Product has been supplied in accordance with previous representations, which the Product did not meet.**

144.    Defendants violated the CCLRA by representing the Product as "Pork and Beans" and as containing "pork," when Defendants knew, or should have known, that the representations and advertisements were false and misleading.

145.    The acts and omissions of these Defendants constitute unfair, deceptive, and misleading business practices in violation of Civil Code § 1770(a).

146.    On October 15, 2015, Plaintiff Tye sent notice to these Defendants in writing, by certified mail, of the violations alleged herein and demanded that these Defendants remedy those violations.

147.    As of November 23, 2015, Defendants have not ceased the challenged conduct or responded to Plaintiff Tye's demand letter.

148.    As a result, Plaintiffs now seek actual, punitive, and statutory damages pursuant to the CCLRA for the California Subclass.

149.    The conduct by these Defendants was malicious, fraudulent, and wanton in that these Defendants intentionally and knowingly provided misleading information to the public.

## COUNT IX

## CALIFORNIA COMMON LAW REGARDING BREACH OF EXPRESS WARRANTY

### On Behalf of the California Sub-Class Only

150.    Plaintiff Tye incorporates all preceding paragraphs of this complaint as if set forth fully herein.

151.    By operation of California law, Defendants entered into a contract with each member of the California Sub-Class when the member purchased a container of the Product at Walmart located in California.

152.    By operation of California law, the terms of this contract included an express warranty incorporating the identical affirmation, promise and description by Defendants regarding the Product, made in writing on the label, that the Product contained **"PORK"** as an ingredient and that the name of the product was **"Great Value Pork & Beans in Tomato Sauce."**

153.    The relevant terms and language of the express warranty between Defendants and each member of the California Sub-Class are identical.

154.    Defendants have breached the terms of this express warranty in an identical manner for each member of the California Sub-Class because the Product actually contained no pork whatsoever and therefore did not, and could not, conform to the affirmation, promise, and description on the label of the Product.

155.    As a direct and proximate result of this breach of express warranty by Defendants, each member of the California Sub-Class has suffered economic loss.

## COUNT X

## NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1 et seq.

## On Behalf of the New Jersey Sub-Class Only

156.    Plaintiff Schmoll incorporates all preceding paragraphs of this complaint as if set forth fully herein.

157.    The New Jersey Consumer Fraud Act clearly applies to all sales of **"Great Value Pork & Beans in Tomato Sauce"** sold in Walmart stores located in New Jersey.

158.    The New Jersey Consumer Fraud Act ("CFA") was enacted to protect consumers against sharp and unconscionable commercial practices by

persons engaged in the sale of goods or services. See Marascio v. Campanella, 298 N.J. Super. 491, 500 (App. Div. 1997).

159.    The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, 182 N.J. 1, 11-12 (2004) (**"The Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public."**).

160.    With regard to the CFA, **"[t]he available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation."** New Mea Const. Corp. v. Harper, 203 N.J. Super. 315, 319 (App. Div. 1986).

161.    For this reason, the **"history of the Act is one of constant expansion of consumer protection."** Kavky v. Herballife International of America, 359 N.J. Super. 497, 504 (App. Div. 2003).

162.    The CFA was intended to protect consumers **"by eliminating sharp practices and dealings in the marketing of merchandise and real estate."** Lemelledo v.  Beneficial Management Corp., 150 N.J. 255, 263 (1997).

163.    Specifically, <u>N.J.S.A</u>. 56:8-2 of the CFA prohibits **"unlawful**

**practices,"** which are defined as:

**"The act, use or employment of any unconscionable commercial
practice, deception, fraud, false pretense, misrepresentation, or
the knowing, concealment, suppression,
or omission of any material fact with intent that others rely upon
such concealment, suppression or omission whether or not any
person has in fact been misled, deceived or damaged thereby."**

164.   The catch-all term **"unconscionable commercial practice"** was

added to the CFA by amendment in 1971 to ensure that the Act covered, <u>inter</u>

<u>alia</u>, **"incomplete disclosures."** <u>Skeer v. EMK Motors, Inc.</u>, 187 N.J. Super.

465, 472 (App. Div. 1982).

165.   In describing what constitutes an **"unconscionable commercial**

**practice,"** the New Jersey Supreme Court has noted that it is an amorphous

concept designed to establish a broad business ethic. <u>See</u> <u>Cox v. Sears Roebuck</u>

<u>& Co</u>., 138 N.J. 2, 18 (1994).

166.   **"Great Value Pork & Beans in Tomato Sauce"** is a "credence

good," because its properties and purported benefits cannot be independently

assessed or verified by the consumer at the time of purchase and such properties

and benefits are made known to consumers only through the information

provided on the label by the product's manufacturer and distributor. <u>See</u> <u>Lee v.</u>

Carter-Reed Co., L.L.C. 203 N.J. 496, 522 (2010). See also Richard A. Posner,

An Economic Approach to the Law of Evidence, 51 Stan. L.Rev. 1477, 1489

(1999) (**"A good is a credence good if the consumer cannot readily**

**determine its quality by inspection or even use, so that he has to take its**

**quality 'on faith.'"**).

167.    The New Jersey Supreme Court in Lee v. Carter-Reed Co., L.L.C.,

203 N.J. 496, 522   (2010) spoke regarding the relationship between dishonest

product labeling and credence goods, stating:

**"A rational consumer does not randomly take a bottle of pills off
a shelf and then purchase it without reading the packaging and
labeling."**

168.    In order to state a cause of action under the CFA, a plaintiff <u>does not</u>

need to show  reliance by the consumer. See Varacallo v. Massachusetts Mut.

Life Ins. Co., 332 N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000); Gennari v.

Weichert Co. Realtors, 148 N.J. 582, 607-608, 691 A.2d 350 (1997) (holding

that reliance <u>is not required</u> in suits under the CFA because liability results from

**"misrepresentations whether 'any person has in fact been misled, deceived**

**or damaged thereby'"**).

169.    Rather, the CFA requires merely a causal nexus between the false

statement and the purchase, not actual reliance. See Lee v. Carter-Reed Co.,

L.L.C., 203 N.J. 496, 522 (2010) (**"causation under the CFA is not the equivalent of reliance"**).

170.    As stated by the New Jersey Supreme Court in Lee, 203 N.J. at 528:

**"It bears repeating that the CFA does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss."**

171.    The purchase of a credence good, where the label on the product contains false misrepresentations of material fact, by itself, establishes a presumption of a causal nexus under the CFA. See Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496 (2010). See also Varcallo, at *49 (**"the purchase of the policy by a person who was shown the literature would be sufficient to establish prima facie proof of causation."**).

172.    By the acts alleged herein, Defendants have violated the CFA.

173.    Specifically, Defendants have made identical, false, written, misstatements of affirmative fact on the label of each container of the Product sold in New Jersey, as outlined previously.

174.    These statements were false when made and Defendants knew that these statements were false when made.

175.   As a result of these false, written affirmative misstatements of material fact, Plaintiff Schmoll and the New Jersey Sub-Class have suffered an ascertainable loss of money.

176.   Specifically, Plaintiff Schmoll and the members of the New Jersey Sub-Class have been deprived of the benefit of the promised bargain – a valid measure of "ascertainable loss" under the CFA according to the New Jersey Supreme Court and New Jersey Appellate Division – in that Plaintiff Schmoll and the members of the New Jersey Sub-Class received something less than what was represented by Defendants on the Product's label.

## COUNT XI

### NEW JERSEY BREACH OF EXPRESS WARRANTY

### On Behalf of the New Jersey Sub-Class Only

177.   Plaintiff Schmoll incorporates all preceding paragraphs of this complaint as if set forth fully herein.

178.   By operation of New Jersey law, Defendants entered into a contract with each New Jersey Sub-Class member, including Plaintiff Schmoll, when the member purchased a container of **"Great Value Pork & Beans in Tomato Sauce"** in New Jersey.

179.   By operation of New Jersey law, the terms of this contract included an express warranty incorporating the identical affirmation, promise and description by Defendants regarding **"Great Value Pork & Beans in Tomato Sauce,"** made in writing on the Product label, which stated that the good contained **"PORK."**

180.   The relevant terms and language of the express warranty between Defendants and each member of the New Jersey Sub-Class are identical.

181.   Defendants have breached the terms of this express warranty in an identical manner for each New Jersey Sub-class member because **"Great Value Pork & Beans in Tomato Sauce"** did not and could not conform to the affirmation, promise and description on this label because, in fact, the Product actually contained no pork whatsoever.

182.   As a direct and proximate result of this breach of express warranty by Defendants, each member of the New Jersey Sub-Class has suffered economic loss.

## COUNT XII

**NEW JERSEY BREACH OF IMPLIED CONTRACT/VIOLATION OF COVENANT OF GOOD FAITH AND FAIR DEALING**

### On Behalf of the New Jersey Sub-Class Only

183.   Plaintiff Schmoll incorporates all preceding paragraphs of this complaint as if set forth fully herein.

184.   By operation of New Jersey law, there existed an implied contract for the sale of goods between Plaintiff Schmoll and each member of the New Jersey Sub-Class who purchased the Product at a Walmart store located in New Jersey.

185.   By operation of New Jersey law, there existed an implied duty of good faith and fair dealing in each such contract.

186.   By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each member of the New Jersey Sub-Class.

187.   As a result of that breach, Plaintiff Schmoll and each member of the New Jersey Sub-Class suffered damages.

## COUNT XIII

### NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT <u>N.J.S.A</u>. 56:12-14 <u>et</u> <u>seq</u>.

### <u>On Behalf of the New Jersey Sub-Class Only</u>

188.   Plaintiff Schmoll incorporates all preceding paragraphs of this complaint as if set forth fully herein.

189.   Plaintiff Schmoll and the members of the New Jersey Sub-Class are "consumers" within the meaning of <u>N.J.S.A</u>. 56:12-15 and 16.

190.   Defendants are "sellers" within the meaning of <u>N.J.S.A</u>. 56:12-15 and 16.

191.   The Product label on **"Great Value Pork & Beans in Tomato Sauce"** is both a consumer "notice" and "warranty" within the meaning of <u>N.J.S.A</u>. 56:12-15 and 16.

192.   By the acts alleged herein, Defendants have violated <u>N.J.S.A</u>. 56:12-16 because, in the course of Defendants' business, Defendants have offered written consumer notices and warranties to Plaintiff Schmoll and the New Jersey Sub-Class which contained provisions which violated their clearly established legal rights under New Jersey state law, within the meaning of <u>N.J.S.A</u>. 56:12-15.

193.    Pursuant to <u>N.J.S.A</u>. 56:12-17, this class complaint seeks a statutory penalty of $100 for each member of the New Jersey Sub-Class, as well as actual damages and attorney's fees and costs.

**<u>COUNT XIV</u>**

**PENNSYLVANIA UNIFORM TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 Pa. Cons.St. § 201–1 <u>et</u> <u>seq</u>**

**<u>On Behalf of the Pennsylvania Sub-Class Only</u>**

194.    Plaintiff Wilcox incorporates all preceding paragraphs of this complaint as if set forth fully herein.

195.    This count does not raise any claims of common law fraud.

196.    Rather, this count raises claims exclusively under the Pennsylvania Uniform Trade Practices and Consumer Protection Law ("UTPCPL").

197.    **"The purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices."** <u>Keller v. Volkswagen of Am., Inc</u>., 733 A.2d 642, 646 (Pa.Super.1999).

198.    It is well-established that, in order to carry out that purpose, the UTPCPL must be liberally construed. <u>See</u> <u>Chiles v. Ameriquest Mortg. Co</u>., 551 F.Supp.2d 393, 398 (E.D.Pa.2008) (**"The UTPCPL must be construed liberally."**); <u>Pirozzi v. Penske Olds-Cadillac-GMC, Inc.</u>, 413 Pa.Super. 308, 605

A.2d 373, 376, <u>appeal</u> <u>denied</u>, 532 Pa. 665, 616 A.2d 985 (1992) (**"our supreme court held that the UTPCPL is to be liberally construed in order to effect its purpose."**)

199.   The conduct alleged herein took place during "trade and commerce" within the meaning of the UTPCPL.

200.   The conduct alleged herein constitutes a deceptive practice.

201.   The UTPCPL 73 P.S. § 201-2(4)(xxi) defines unfair or deceptive acts or practices, <u>inter</u> <u>alia</u>, as any: **"deceptive conduct which creates a likelihood of confusion or misunderstanding."**

202.   Prior to 1996, 73 P.S. § 201-2(4)(xxi) required that a defendant engage in the equivalent of common law fraud. <u>See</u> <u>Flores v. Shapiro & Kreisman</u>, 246 F.Supp.2d 427, 432 (E.D.Pa.2002); <u>Commonwealth of Pa. v. Percudani</u>, 825 A.2d 743, 746-47 (Pa.Commw.2003).

203.   In 1996, however, UTPCPL 73 P.S. § 201-2(4)(xxi) was amended to add the word "deceptive" as an alternative to "fraud" in describing the practices prohibited by this section. <u>See</u> <u>Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC</u>, 40 A.3d 145 (Pa.Super.2012) (holding that the amendment to the catch-all provision that added the language "or deceptive conduct" changed the requirement from proving actual fraud to merely proving deceptive conduct);

<u>Commonwealth of Pa. v. Percudani</u>, 825 A.2d 743, 746-47 (Pa.Commw.2003) (a plaintiff who alleges deceptive conduct to proceed without proving all of the elements of common law fraud); <u>Flores v. Shapiro & Kreisman</u>, 246 F.Supp.2d 427, 432 (E.D.Pa.2002):

**"by adding a prohibition on 'deceptive' conduct, the 1996 amendment to the CPL eliminated the need to plead all of the elements of common law fraud in actions under the CPL. Under general principles of statutory interpretation, no word should be rendered redundant. The new word "deceptive" in the statute, therefore, must have been intended to cover conduct other than fraud."**

204.   As alleged herein, Defendants have engaged in deceptive conduct which creates a likelihood of confusion or misunderstanding.

205.   Such conduct is based on both affirmative misrepresentations, material nondisclosures and material omissions.

206.   In the case at bar, Defendants' actions in stating on the label that the Product contained **"PORK"** as an ingredient and that the name of the product was **"Great Value Pork & Beans in Tomato Sauce"** constituted **"deceptive conduct which creates a likelihood of confusion or misunderstanding"** within the meaning of 73 P.S. § 201-2(4)(xxi).

207.   Defendants also engaged in a knowing omission of material fact by failing to inform consumers in any fashion that the Product actually contained no pork.

208.   These affirmative representations and omissions constitute a deceptive practice.

209.   By the acts alleged herein, Defendants have made a misrepresentation of a material fact and a material nondisclosure, as described herein.

210.   Defendants acted with knowledge that their conduct was deceptive and with intent that such conduct deceived consumers.

211.   While it is not clear that actual reliance is required, Plaintiff Wilcox and the members of the Pennsylvania Sub-Class did justifiably rely upon the misrepresentation and material nondisclosure; a reliance which may be presumed in this case where Defendants have engaged in a common course of identical conduct.

212.   Indeed, it impossible to conclude there was no reliance in this case since the false affirmative statement of fact alleged herein is contained in the name of the product itself, which includes the words "Pork & Beans" in the Product name. It is a logical certainty that anyone wishing to purchase pork and

beans would, of necessity, have to look at the product label to see the name of the product and therefore saw that it was called pork and beans.

213.   In addition, Defendants' conduct violated 73 P.S. § 201-2(4) (vii) by **"representing that goods… are of a particular standard, quality or grade… if they are of another."**

214.   As a proximate result of this conduct, Plaintiff Wilcox and the members of the Pennsylvania Sub-Class have suffered an ascertainable loss of money.

## COUNT XV

## PENNSYLVANIA COMMON LAW BREACH OF EXPRESS WARRANTY

### On Behalf of the Pennsylvania Sub-Class Only

215.   Plaintiff Wilcox incorporates all preceding paragraphs of this complaint as if set forth fully herein.

216.   By operation of Pennsylvania law, Defendants entered into a contract with each Pennsylvania Sub-Class member when the member purchased a container of **"Great Value Pork & Beans in Tomato Sauce"** in Pennsylvania.

217.   By operation of Pennsylvania law, the terms of this contract included an express warranty incorporating the identical affirmation, promise and description by Defendants regarding **"Great Value Pork & Beans in Tomato**

**Sauce,"** made in writing on the Product label, which stated that the good contained **"PORK."**

218.   The relevant terms and language of the express warranty between Defendants and each member of the Pennsylvania Sub-Class are identical.

219.   Defendants have breached the terms of this express warranty in an identical manner for each Pennsylvania Sub-Class member because **"Great Value Pork & Beans in Tomato Sauce"** did not and could not conform to the affirmation, promise and description on this label because, in fact, the Product actually contained no pork whatsoever.

220.   As a direct and proximate result of this breach of express warranty by Defendants, each member of the Pennsylvania Sub-Class, including Plaintiff Wilcox, has suffered economic loss.

## COUNT XVI

### PENNSYLVANIA COMMON LAW BREACH OF IMPLIED CONTRACT/ VIOLATION OF COVENANT OF GOOD FAITH AND FAIR DEALING

### On Behalf of the Pennsylvania Sub-Class Only

221.   Plaintiff Wilcox incorporates all preceding paragraphs of this complaint as if set forth fully herein.

222.    By operation of Pennsylvania law, there existed an implied contract for the sale of goods between Plaintiff Wilcox and each member of the Pennsylvania Sub-Class who purchased the Product at a Walmart store located in Pennsylvania and Defendants.

223.    By operation of Pennsylvania law, there existed an implied duty of good faith and fair dealing in each such contract.

224.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each member of the Pennsylvania Sub-Class.

225.    As a result of that breach, Plaintiff Wilcox and each member of the Pennsylvania Sub-Class suffered damages.

## COUNT XVII

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

### On Behalf of the New York Sub-Class Only

226.    Plaintiff Lamster incorporates all preceding paragraphs of this complaint as if set forth fully herein.

227.    Defendants' business practices of marketing, advertising, promoting and selling their **"Great Value Pork & Beans in Tomato Sauce"** in a misleading, inaccurate, and deceptive manner by misrepresenting that the

Product contains pork constitutes an unconscionable commercial practice, deception, and misrepresentation and thus constitutes multiple, separate violations of the GBL §349.

228.   Defendants' marketing, advertising, promoting and selling of **"Great Value Pork & Beans in Tomato Sauce"** is a consumer-oriented practice, as the Product is advertised, promoted, marketed and sold to consumers throughout the state of New York.

229.   In the marketing, advertising, promotion and sale of its **"Great Value Pork & Beans in Tomato Sauce"** to consumers, including Lamster and the New York Subclass members, Defendants made the material misrepresentations and omissions throughout the State of New York, in that Defendants marketed, promoted and advertised the **"Great Value Pork & Beans in Tomato Sauce"** as having characteristics and attributes which it did not actually possess.

230.   Defendants' unlawful conduct is material in that it has the capacity to mislead or deceive consumers, including Lamster and the New York Subclass members.

231.   Defendants' unconscionable commercial practices, false promises, misrepresentations and omissions are material in that they relate to matters to

which reasonable persons, including Lamster and the New York Subclass members, would attach importance in their decisions or conduct relating to their purchase of **"Great Value Pork & Beans in Tomato Sauce."**

232.   Defendants' misrepresentations affected the cost of the "**Great Value Pork & Beans in Tomato Sauce"** product.

233.   Defendants charged Lamster and the New York Subclass more money for this particular bean product as the **"Great Value Pork & Beans in Tomato Sauce"** purported to include pork, which is an ingredient not found in its less expensive bean products.

234.   Defendants' deception caused an inflated price for this particular product resulting in injury to Lamster and the New York Subclass.

235.   Said inflated price and the premium paid caused Lamster and the New York Subclass to suffer actual harm and an injury recognized under the N.Y. Gen. Bus. Law.

236.   By reason of the foregoing, Defendants have violated N.Y. Gen. Bus. Law § 349, and should be enjoined from representing that their Products contain pork.  Defendants are also liable to Lamster and the other members of the New York Subclass for the damages that they have suffered as a result of

Defendants' actions, to be determined at trial, such damages to be trebled, plus attorneys' fees.

## COUNT XVIII

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350

## On Behalf of the New York Sub-Class Only

237.   Plaintiff Lamster incorporates all preceding paragraphs of this complaint as if set forth fully herein.

238.   By the acts alleged herein, Defendants engaged in the false advertising of their **"Great Value Pork & Beans in Tomato Sauce"** in violation of the GBL § 350.

239.   As alleged with greater particularity herein, Defendants marketed, promoted and advertised the **"Great Value Pork & Beans in Tomato Sauce"** as having characteristics and attributes which it did not actually possess.

240.   Defendants' unconscionable commercial practices, false promises, misrepresentations and omissions set forth in this Complaint are material in that they have the capacity to mislead or deceive consumers, including Lamster and the New York Sub-Class members.

241.   Defendants' unconscionable commercial practices, false promises, misrepresentations and omissions set forth in this Complaint are material in that

they relate to matters to which reasonable persons, including Lamster and the New York Sub-Class members, would attach importance in their decisions or conduct relating to the purchase of **"Great Value Pork & Beans in Tomato Sauce."**

242.    Defendants' misrepresentations affected the cost of their product.

243.    Defendants charged Lamster and the New York Sub-Class more money for these particular bean products, as the **"Great Value Pork & Beans in Tomato Sauce"** purported to include pork, which is not found in their less expensive bean products.

244.    Defendants' deception caused an inflated price resulting in injury to Lamster and the New York Sub-Class.

245.    Said inflated price and the premium paid caused Lamster and the New York Sub-Class to suffer actual harm and injury recognized under the N.Y. Gen. Bus. Law.

246.    By reason of the foregoing, Defendants have violated N.Y. Gen. Bus. Law § 350, and should be enjoined from representing that their Product contains pork.  Defendants are also liable to Plaintiff Lamster and the other members of the New York Sub-Class for the damages that they have suffered as

a result of Defendants' actions, such damages to be determined at trial, such damages to be trebled, plus attorneys' fees.

## COUNT XIX

### NEW YORK COMMON LAW BREACH OF EXPRESS WARRANTY

### On Behalf of the of the New York Sub-Class

247.   Plaintiff Lamster incorporates all preceding paragraphs of this complaint as if set forth fully herein.

248.   Defendants expressly warranted in their marketing, advertising and promotion of **"Great Value Pork & Beans in Tomato Sauce"** that the product contained **"pork."**

249.   Defendants' above representations constitute affirmations of facts or promises to Plaintiff Lamster and the members of the New York Sub-Class that relate to the **"Great Value Pork & Beans in Tomato Sauce"** and became part of the basis of their bargain in purchasing the same.

250.   Such affirmation of fact creates an express warranty under New York law that **"Great Value Pork & Beans in Tomato Sauce"** will conform to the express description and possess the characteristics as set forth in Defendants' marketing, promotional and advertising materials.

251.   Defendants breached their express warranties because **"Great Value Pork & Beans in Tomato Sauce"** does not conform to Defendants' promises, descriptions or affirmations of fact made by Defendants in their marketing, advertising and promotion.  Defendants' **"Great Value Pork & Beans in Tomato Sauce"** product therefore was not adequately packaged, labeled, sold, promoted or fit for the ordinary purposes for which it was used.

252.   Plaintiff Lamster and the New York Sub-Class members purchased Defendants' **"Great Value Pork & Beans in Tomato Sauce"** products based upon and in reliance on this false warranty.

253.   As a direct and proximate result of Defendants' breach of express warranty, Defendants are liable to Plaintiff Lamster and the New York Sub-Class members for the damages incurred as a result of Defendants' actions, including, but not limited to, the purchase price of Defendants' **"Great Value Pork & Beans in Tomato Sauce"** products, the amount of such damages to be determined at trial.

# COUNT XX

## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
## 815 ILCS 505/1, et seq.

### On Behalf of the Illinois Sub-Class Only

254.   Plaintiff Mullins incorporates all preceding paragraphs of this complaint as if set forth fully herein.

255.   Plaintiff Mullins brings this claim individually and on behalf of the Illinois Sub-Class.

256.   As alleged herein, Plaintiff Mullins has suffered injury in fact and lost money or property as a result of Defendants' conduct because she purchased the Product which Defendants falsely claimed contained both pork and beans, but received a product containing no pork.

257.   At all times relevant hereto, the sale of the Product in Illinois was governed by the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq.

258.   The ICFA is a regulatory and remedial statute intended to protect consumers, including Plaintiff Mullins and the Illinois Sub-Class, against unfair or deceptive acts or practices.

259.   Specifically, Section 2 of the ICFA prohibits deceptive acts or

practices, which are committed in the course of trade or commerce and with the

intent that others rely upon them. <u>See</u> 815 ILCS 505/2, which states:

**"Unfair methods of competition and unfair or deceptive acts or
practices, including but not limited to the use or employment of any
deception, fraud, false pretense, false promise, misrepresentation or
the concealment, suppression or omission of any material fact, with
intent that others rely upon the concealment, suppression or
omission of such material fact, or the use or employment of any
practice described in Section 2 of the "Uniform Deceptive Trade
Practices Act", approved August 5, 1965, in the conduct of any trade
or commerce are hereby declared unlawful whether any person has
in fact been misled, deceived or damaged thereby."**

260.   In addition, 815 ILCS 510/2(a)(5) of the Uniform Deceptive Trade

Practices Act states:

**"A person engages in a deceptive trade practice when, in the course
of his or her business, vocation, or occupation, the person ...
represents that goods or services have . .. characteristics, . . . uses,
[or] benefits . . . that they do not have . . . ."**

261.   Plaintiff Mullins and the Illinois Sub-Class reserve the right to allege

other violations of law, which constitute other unlawful business acts or

practices. Such conduct is ongoing and continues to this date.

262.   The above-described unfair or deceptive acts or practices occurred in

the course of conduct involving trade or commerce, namely, the sale of goods to

Plaintiff Mullins and the Illinois Sub-Class.

263.   Defendants' practice of knowingly and unlawfully engaging in the activity described above also constitutes "unfair" business acts or practices because, inter alia, Defendants engaged in false advertising, which misrepresents and omits material facts regarding the Product.

264.   Defendants' business acts or practices therefore offend an established public policy, and Defendants engage in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, as alleged in detail previously, and therefore Defendants' actions are unfair or deceptive acts or practices prohibited by Chapter 2 of the ICFA. 815 ILCS 505/2.

265.   Defendants intended that Plaintiff Mullins and the Illinois Sub-Class rely on the deceptive acts or practices described herein. Defendants' intent is evidenced by, inter alia, that Defendants included the words "Pork & Beans" in the name of the Product itself, even though Defendants were aware that the Product did not, in fact, contain any pork.

266.   As a matter of necessity, any consumer wishing to purchase a pork and beans product would have to look at, and rely upon, the name of the Product, as stated on the label.

267.   Defendants' material misrepresentations and omissions described above have caused harm to Plaintiff Mullins and other members of the Illinois Sub-Class.

268.   Plaintiff Mullins and the other members of the Illinois Sub-Class have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

## COUNT XXI

## ILLINOIS COMMON LAW REGARDING BREACH OF EXPRESS WARRANTY

## On Behalf of the Illinois Sub-Class Only

269.   Plaintiff Mullins incorporates all preceding paragraphs of this complaint as if set forth fully herein.

270.   By operation of Illinois law, Defendants entered into a contract with each member of the Illinois Sub-Class when the member purchased a container of the Product at Walmart located in Illinois.

271.   By operation of Illinois law, the terms of this contract included an express warranty incorporating the identical affirmation, promise and description by Defendants regarding the Product, made in writing on the label, that the

Product contained **"PORK"** as an ingredient and that the name of the product was **"Great Value Pork & Beans in Tomato Sauce."**

272.   The relevant terms and language of the express warranty between Defendants and each member of the Illinois Sub-Class are identical.

273.   Defendants have breached the terms of this express warranty in an identical manner for each member of the Illinois Sub-Class because the Product actually contained no pork whatsoever and therefore did not, and could not, conform to the affirmation, promise, and description on the label of the Product.

274.   Plaintiff Mullin's claim complies with 810 ILCS 5/2-607(3)(a).

275.   Specifically, on November 9, 2015, Plaintiff Mullins served a written "Notice of Breach of Warranties/Defects re: Great Value Pork and Beans in Tomato Sauce" upon Defendants, on behalf of Mullins and the Illinois Sub-Class, providing direct written notice of the defect and asking for remedial measures. Defendants have not ceased the challenged conduct, nor have they responded to that Notice.

276.   Moreover, such written notice by Plaintiff Mullins was not necessary as Defendants knew or should have known of the problem with Plaintiff Mullins' purchases (i.e. lack of any pork in the product) as this defect by its very nature necessarily affected all cans of the Product sold by Defendants including the

specific cans purchased by the Plaintiff Mullins and the Illinois Sub-Class, prior to filing this complaint.

277.   As a direct and proximate result of this breach of express warranty by Defendants, each member of the Illinois Sub-Class has suffered economic loss.

## COUNT XXII

### ILLINOIS BREACH OF IMPLIED CONTRACT/VIOLATION OF COVENANT OF GOOD FAITH AND FAIR DEALING

### On Behalf of the Illinois Sub-Class Only

278.   Plaintiff Mullins incorporates all preceding paragraphs of this complaint as if set forth fully herein.

279.   Alternatively, if the Court concludes there was no actual express warranty or contract between Defendants and the members of the Illinois Sub-Class, then, by operation of Illinois law, there existed an implied contract for the sale of goods between the Defendants and Plaintiff Mullins and each member of the Illinois Sub-Class who purchased the Product at a Walmart store located in Illinois.

280.   By operation of Illinois law, there existed an implied duty of good faith and fair dealing in each such contract.

281.    By the acts alleged herein, Defendants have failed to abide by the terms of the implied contract and violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each member of the Illinois Sub-Class.

282.    Plaintiff Mullin's claim complies with 810 ILCS 5/2-607(3)(a).

283.    Specifically, on November 9, 2015, Plaintiff Mullins served a written "Notice of Breach of Warranties/Defects re: Great Value Pork and Beans in Tomato Sauce" upon Defendants, on behalf of Mullins and the Illinois Sub-Class, providing direct written notice of the defect and asking for remedial measures. Defendants have not ceased the challenged conduct, nor have they responded to that Notice.

284.    Moreover, such written notice by Plaintiff Mullins was not necessary as Defendants knew or should have known of the problem with Plaintiff Mullins' purchases (i.e. lack of any pork in the product) as this defect by its very nature necessarily affected all cans of the Product sold by the Defendants, including the specific cans purchased by Plaintiff Mullins and the Illinois Sub-Class, prior to filing this complaint.

285.    As a result of that breach, Plaintiff Mullins and each member of the Illinois Sub-Class suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask this court to:

a. Certify the proposed Nationwide Class and each State Sub-Class as class actions pursuant to Fed.R.Civ.P. 23;

b. Enter an order for injunctive, equitable and declaratory relief as described herein;

c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

d. Award plaintiffs reasonable attorneys' fees and costs;

e. Award plaintiffs and the class treble damages where appropriate; and

f. Grant such other and further legal and equitable relief as the court deems just and equitable.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues so triable.

By: s/Todd M. Friedman
Todd M. Friedman (SBN: 216752)

**LAW OFFICE OF TODD M. FRIEDMAN**
324 Beverly Dr., #725
Beverly Hills, CA 90212
Tel: (877) 206-4741
Fax: (866) 633-0228
tfriedman@attorneysforconsumers.com

Stephen P. DeNittis (*pro hac vice* pending)
**DeNITTIS OSEFCHEN, P.C.**
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Tel: 856-797-9951
Fax: 856-797-9978
sdenittis@denittislaw.com

Janine L. Pollack (*pro hac vice* pending)
**WOLF HALDENSTEIN ADLER FREEMAN    & HERZ LLP**
270 Madison Avenue
New York, NY 10016

Ross H. Schmierer (*pro hac vice* pending)
**PARIS ACKERMAN & SCHMIERER, LLP**
103 Eisenhower Parkway
Roseland, NJ  07068

Richard J. Lantinberg (*pro hac vice* pending)
**THE WILNER FIRM**
444 E. Duval Street
Jacksonville, FL 32202

Dated: November 24, 2015
Counsel for Plaintiffs and the Class

**<u>Attachment A</u>**

HOW WAS YOUR EXPERIENCE?
Tell us about your visit today and
you could win 1 of 5 $1000 Walmart
gift cards or 1 of 760 $100 Walmart
gift cards. Diganos acerca de su
visite a Walmart hoy y usted podria
ganar una de las 5 tarjetas de regalo
de Walmart de $1000 o una de las 760
tarjetas de regalo de Walmart de
$100.

http://www.survey.walmart.com

ID #:  7HX9KN1Z2MPD

No Purchase Necessary. Must be 18 or
older and a legal resident of the 50
US, DC, or PR to enter. To enter
without purchase and for official
rules, visit
www.entry.survey.walmart.com.
Sweepstakes period ends on the date
outlined in the official rules.
Survey must be taken within ONE week
of today. Void where prohibited.
THANK YOU!



Save money. Live better.
( 714 ) 869 - 0630
MANAGER MELVIN ENRIQUEZ
1000 E IMPERIAL HWY
LA HABRA, CA 90631
ST# 05641  OP# 000763 TE# 16 TR# 03285
NOYOLK NOODL 007173000716 F    1.98 O
NOYOLK NOODL 007173000716 F    1.98 O
NOYOLK NOODL 007173000716 F    1.98 O
SPRAY GLUE   002500000422      6.97 X
GV PORK BEAN 007874237084 F    0.66 O
              SUBTOTAL         12.57
       TAX 1  8.500 %           0.51
                 TOTAL         13.08
             MCARD TEND        13.08

ACCOUNT #        **** **** **** 0022  S
APPROVAL # 587026
REF # 1042000314
TERMINAL # 16829581B

     10/02/15     11:46:53

       CHANGE DUE      0.00

     # ITEMS SOLD 5

TC# 3341 4792 2044 3716 6306

Low Prices You Can Trust. Every Day.
     10/02/15     11:46:54

     ***CUSTOMER COPY***



1

## **<u>Attachment B</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Save money. Live better.

```
         ( 866 ) 666 - 5430
        MANAGER FAISAL KHAN
          500 ROUTE 38
        CHERRY HILL NJ 8002
ST# 05340 OP# 003171 TE# 17 TR# 06741
GV PORK BEAN 007874237084 F     0.72 O
GV PORK BEAN 007874237084 F     0.72 O
GV PORK BEAN 007874237084 F     0.72 O
FLOSS        003700003866       3.37 X
REPHRESH     036671583304      15.96 X
                SUBTOTAL        21.49
             VENDOR COUPON       1.00-O
                SUBTOTAL        20.49
             VENDOR COUPON       2.00-O
                SUBTOTAL        18.49
        TAX 1   7.000 %          1.36
                   TOTAL        19.85
             DEBIT  TEND        19.85
             CHANGE DUE          0.00


EFT DEBIT        PAY FROM PRIMARY
    19.85  TOTAL PURCHASE
ACCOUNT #        **** **** **** 1583  S
REF # 524200651878
NETWORK ID. 0090 APPR CODE 271147
TERMINAL # SC011186


      08/30/15    10:52:52
```

# # ITEMS SOLD 5

```
TC# 4221 4119 2546 3317 9320
```

Low Prices You Can Trust. Every Day.
```
      08/30/15    10:52:54
```

Savings Catcher! Scan with Walmart app



**<u>Attachment C</u>**

www.entry.survey.walmart.com.
Sweepstakes period ends on the date
outlined in the official rules.
Survey must be taken within ONE week
of today. Void where prohibited.
THANK YOU!
------------------------------------------



**Walmart** ✳

**Save money. Live better.**

( 215 ) 468 - 4220
MANAGER FRANK PELLICORI
1675 S CHRISTOPHER COLUMBUS BL
PHILADELPHIA PA 19148
ST# 02141 OP# 006910 TE# 04 TR# 08803
GV PORK BEAN 007874237084 F      0.66 O
GV PORK BEAN 007874237084 F      0.66 O
GV PORK BEAN 007874237084 F      0.66 O
ORANGES      000000004012KI      0.78 N
AQUAFINA     001200000159 F      1.58 N
GUM          007339001404 F      2.96 N
                   SUBTOTAL       7.30
                      TOTAL       7.30
                 CASH  TEND       8.00
                 CHANGE DUE       0.70

**# ITEMS SOLD 6**

TC# 6598 7913 8397 2946 4817



Low Prices You Can Trust. Every Day.
10/06/15        10:05:11

Savings Catcher! Scan with Walmart app



# **Attachment D**



Save money. Live better.

```
              ( 845 ) 368 - 4705
              MANAGER DAVID YEAGLEY
                  250 ROUTE 59
                SUFFERN NY 10901
ST# 02905 OP# 004411 TE# 10 TR# 04960
INFLT PILLOW 076057600766      2.47 X
INFLT PILLOW 076057600766      2.47 X
INFLT PILLOW 076057600766      2.47 X
REM OIL 1OZ 004770026617       2.37 X
  ** VOIDED ENTRY **
INFLT PILLOW 076057600766      2.47-X
LIP CARE    030573190037       2.94 N
BIC LIGHTER 007033064304       1.32 X
GV PORK BEAN 007874237084 F    0.72 O
GV PORK BEAN 007874237084 F    0.72 O
GV PORK BEAN 007874237084 F    0.72 O
                 SUBTOTAL      13.73
       TAX 1   8.375 %          0.72
                    TOTAL      14.45
               MCARD TEND      14.45

CHASE MASTERCARD * **** **** 4774  I 1
APPROVAL # 08283P
REF # 1042000314

AID A0000000041010
TC 624D56E12732FE42
TERMINAL # SC010401
*NO SIGNATURE REQUIRED

        10/10/15    11:49:47

           CHANGE DUE      0.00
```

# # ITEMS SOLD 8

TC# 6778 2358 4722 2949 846



Low Prices You Can Trust. Every Day.
```
        10/10/15    11:49:47
```

***CUSTOMER COPY***

Savings Catcher! Scan with Walmart app

